# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**JOFRAN SALES, INC.**                                    )
)
        **Plaintiff,**                                    )
)
**v.**                                                    )
)
**WATKINS AND SHEPARD TRUCKING, INC.,**  )                    **Civil Action No.**
)                    **16-11174-FDS**
        **Defendant,**                                    )
)
_____)


## MEMORANDUM AND ORDER ON MOTION TO DISMISS

**SAYLOR, J.**

        This matter arises out of a contract dispute between a wholesale furniture supplier and a

trucking and freight management company.  Plaintiff Jofran Sales, Inc., has brought suit against

defendant Watkins and Shepard Trucking, Inc.  In 2015, plaintiff and defendant entered into a

contract for defendant to process and store plaintiff's furniture inventory at a warehouse in

California.  Plaintiff contends that defendant failed to store inventory properly, failed to send

needed notifications and reports concerning incoming and outgoing inventory, and sent improper

invoices.  The verified complaint alleges seven claims, including claims for breach of contract,

negligence, tortious interference with business relations, and violations of consumer protection

statutes under Massachusetts, Montana, and California law.

        Defendant has filed a motion to dismiss on the basis of *forum non conveniens*, or, in the

alternative, to dismiss Counts Five and Six of the verified complaint, which allege violations of

the Massachusetts and Montana Consumer Protection Acts, respectively. For the following

reasons, defendant's motion to dismiss will be denied in part and granted in part.

## I.   <u>Factual Background</u>

The following facts are presented as stated in the complaint with all inferences construed in plaintiff's favor.  In addition, the Court will consider all documents whose contents are alleged and the authenticity no party questions as "effectively merge[d] into the pleadings." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

Plaintiff, Jofran Sales, Inc., is a wholesale seller of furniture, much of which is imported. Defendant Watkins and Shepard Trucking, Inc. manages warehouses and ships furniture.  Jofran is based in Massachusetts, while Watkins is based in Montana.

From 2008 to 2015, Jofran received furniture cargo at the port in Tacoma, Washington. Pursuant to a Storage Pricing Agreement between the parties, Watkins was responsible for handling and storing the cargo when it arrived at port.  Jofran's larger customers ordered furniture and sent their own shippers to the Watkins's warehouse to pick it up.  Watkins handled arrangements for the pick-up, including staging the inventory, confirming scheduled pick-up appointments, and notifying Jofran when pick-ups occurred.  Watkins and Jofran had a separate shipping contract, pursuant to which Watkins shipped inventory to smaller customers that did not do their own pick-up.  Watkins was responsible for providing Jofran with notifications and reports about the inventory so that Jofran could know what inventory was available to sell or ship to customers, and what was available for pick-up.

By the end of 2014, Jofran was beginning to outgrow the Washington warehouse. Watkins suggested that Jofran move its inventory to a larger facility in southern California.  In May 2015, Watkins showed Jofran a warehouse on Beech Avenue in Fontana, California, that Jofran determined would suit its needs.  Although the warehouse was not yet set up, Watkins confirmed that it would be ready by September 2015.

The parties entered into a new two-year Storage Pricing Agreement (the "2015 Agreement"), under which Watkins agreed to provide similar notifications, reports, and services as under the old agreement, and further provided that all inventory would be placed on racks in order to prevent damage.  Jofran signed the 2015 Agreement at its offices in Norfolk, Massachusetts.  Watkins signed the Agreement at its offices in Missoula, Montana.  The 2015 Agreement became effective on September 1, 2015.

Problems with the new warehouse began almost immediately.  In September 2015, Jofran began shipping inventory from the Washington warehouse to the Beech Avenue warehouse. Contrary to the parties' agreement, the Beech Avenue warehouse was not prepared to receive the shipments on September 1, so the containers sat unemptied on the lot.  Watkins began moving the inventory into the warehouse during the last week of September.  The late opening caused a backlog that significantly delayed Watkins' first shipments of Jofran's inventory.

In October 2015, Watkins informed Jofran that it planned to move Jofran's inventory from the Beech Avenue warehouse to a different facility located on Hemlock Avenue in Fontana. Jofran later learned that it was Watkins' sole customer at the Hemlock Avenue warehouse.  The Hemlock Avenue warehouse did not contain racks to properly store the inventory, so some furniture was damaged.

In addition to the problems with the Hemlock Avenue warehouse, Jofran had problems receiving accurate information about the status of its inventory.  In early November 2015, a Jofran representative traveled from Massachusetts to visit the Hemlock Avenue warehouse in order to try to resolve the notification issues.  While at the warehouse, the representative observed that Watkins lacked the necessary technology to scan inventory as it was unloaded from containers, which prevented Jofran from receiving the reports and notifications it needed to

3

manage customer orders.  She also observed that inventory was not in the proper location, inventory was not correctly labeled, and numerous orders had not been shipped.

Jofran continued to have problems with Watkins' inventory management, including failure to put out orders for pick-up, failure to generate proper paperwork for orders, and failure to ship orders.  Those problems caused delays, cancellations, orders to be sent with the wrong inventory, and orders to go missing.

Beginning in October 2015, Jofran also started having issues with the invoices issued by Watkins.  Jofran contends that Watkins backdated invoices and then claimed they were overdue; charged fees for storage based on inflated inventory levels; and claimed that invoices had been sent that Jofran never received.  Watkins did not respond to Jofran's repeated requests for documentation to support what it viewed as inaccuracies in the invoices.  As a result, Jofran did not pay the invoices.

On January 8, 2016, Watkins sent Jofran a letter by e-mail at its Massachusetts office claiming an arrearage of $250,728.33, the majority of which was more than twenty days past due.  The letter stated that, "[b]ecause of this sizable and persistent arrearage, it is clear that Jofran has no intention of performing its obligations . . . ."  The letter further stated that Watkins considered the arrearage a "material breach" of the parties' agreement, that it was rescinding the agreement, and that it would not ship any Jofran inventory until the account was paid in full.

On January 11, 2016, Jofran and Watkins entered into an agreement under which Jofran agreed to pay $150,000 and provide Watkins with an itemized list by January 22, 2016, of all invoices that it disputed or had never received.  The parties agreed to "work in good faith and with best efforts to resolve their mutual disputes regarding the Contracts."

Jofran wired Watkins $150,000 the following day.  On January 22, it sent a letter

detailing the invoice issues and requesting additional information. Watkins did not respond to the

letter.  Instead, on January 25, 2016, Watkins sent Jofran a letter stating that it still considered

Jofran to be in material breach, and that it would move forward with the relationship only if

Jofran agreed to a new "simplified" pricing arrangement that was more expensive than the

existing contract terms.  Four days later, Jofran responded that it had sustained damages caused

by Watkins' warehousing issues and that it would not move forward with a new arrangement

until the parties resolved the existing dispute over invoices.

On February 3, 2016, Watkins informed Jofran that it was "no longer interested in

salvaging any business relationship," and served Jofran with a complaint that it had filed in

Montana state court two weeks earlier.

On March 8, 2016, Watkins forwarded Jofran a notice it had received that informed

Watkins that its landlord was terminating the lease on the Hemlock Avenue warehouse as of

May 8, 2016.  This notice was the first indication Jofran received that the lease could be

terminated on a mere sixty days' notice, despite the two-year term of the 2015 Agreement.

Watkins informed Jofran that it had to move its inventory out of the warehouse by May 8.  Jofran

entered into a new contract with a third party to store and service its inventory beginning in May

2016.  Because of the short timeframe, Jofran was at a disadvantage in negotiating terms, and the

new contract is more costly than the 2015 Agreement.

By June 2016, Jofran learned that Watkins has recently been acquired by a third-party

trucking company, Schneider National, Inc.

## II.    <u>Procedural Background</u>

Jofran brought this action on June 21, 2016.  In substance, the complaint alleges seven

claims against Watkins for breach of contract, violation of the implied covenant of good faith

and fair dealing, negligence, tortious interference with prospective business relationship, and violations of consumer protection statutes under Massachusetts, Montana, and California law. The complaint also sought a temporary restraining order and preliminary injunction to enjoin Watkins from depleting or distributing funds such that Jofran would be unable to collect on a judgment.  The verified complaint sought an attachment by trustee process of funds in an account held by Watkins' at PNC Financial Services Group, Inc.

On July 7, 2016, the Court denied Jofran's claims for a preliminary injunction and temporary restraining order, but granted the claim for trustee process attachment in the amount of $658,301.  On August 2, 2016, the Court granted Watkins' assented-to motion to dissolve the trustee process attachment after the parties agreed that Watkins would post a bond for the same amount in lieu of the attachment.

Watkins has moved to dismiss this suit on the basis of *forum non conveniens*, or, in the alternative, to dismiss Jofran's consumer protection claims under Massachusetts and Montana law.

This is the second action filed arising out of the same dispute between the parties.  As noted, Watkins filed an action in Montana state court on January 19, 2016.  Jofran has moved to dismiss that suit based on lack of personal jurisdiction.  That motion is pending.

III.   **Analysis**

A.      **Motion to Dismiss on the Basis of *Forum Non Conveniens***

Under the common-law doctrine of *forum non conveniens,* a court may dismiss a case "when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's

own administrative and legal problems." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 429 (2007) (quoting *American Dredging Co. v. Miller,* 510 U.S. 443, 447–448 (1947) (alterations omitted)).   When a plaintiff selects its home forum, as here, it "should not be deprived of it absent a 'clear showing' of either 'oppressiveness and vexation' or evidence that the chosen forum is 'inappropriate.'" *Adelson v. Hananel,* 510 F.3d 43, 53 (1st Cir. 2007) (quoting *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947)).   A defendant bears "a heavy burden" in overcoming the presumption in favor of plaintiff's chosen forum.   *Sinochem,* 549 U.S. at 42.   Nonetheless, "a citizen's forum choice should not be given dispositive weight and dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." *Interface Partners Int'l Ltd. v. Hananel,* 575 F.3d 97, 102 (1st Cir. 2009) (quotations and citation omitted).

Dismissal on the ground of *forum non conveniens* requires that a defendant establish (1) that there is an "adequate alternative forum" and (2) that "considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir. 2000).

Before plaintiff filed this action, defendant had filed an action arising out of the same transaction in Montana state court.   Defendant contends that the Montana court is an adequate alternative forum for the purposes of this motion.[1]   Plaintiff contends that the Montana state court does not have personal jurisdiction over it, and thus cannot be considered an adequate alternative forum.   Assuming, without deciding, that the Montana court is an adequate alternative

---

[1] *Forum non conveniens* is most often applied in the context of a defendant asserting an adequate alternative forum in another country, rather than, as here, another state.  *See Sinochem,* 549 U.S. at 430.  Notably, defendant has not provided the Court with a single case to consider in which a court dismissed an action on the basis of *forum non conveniens* where the alternative forum was a state court.  Nevertheless, the Supreme Court has directed that the doctrine may "perhaps" be available "in rare instances where a state or territorial court serves litigational convenience best."  *Id.*

forum, the Court finds that the defendant has failed to carry its "heavy burden" to show that the balance of public and private interest factors favors litigation in the Montana court to overcome the presumption in favor of plaintiff's choice of home forum.

### 1.   Balancing Public and Private Interest Factors

To succeed on a motion to dismiss on the basis of *forum non conveniens*, the defendant must show that the balance of various private and public interests so favors an alternative forum as to overcome the presumption in favor of the plaintiff's choice of forum.  The Supreme Court has described a list of illustrative, non-exclusive factors that courts may consider, emphasizing the "need to retain flexibility."  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249 (1981).  For private interests, the factors include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).  As for the public interest, relevant considerations are "the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty."  *Iragorri,* 203 F.3d at 12 (quoting *Gulf Oil Corp.,* 330 U.S. at 508–09).

There are two venues at issue in this litigation, one located in Massachusetts and one located in Montana.  Each party has brought an action arising out of the same events in its home forum.

Defendant contends that the private interest factors favor Montana because the majority

of the current and former employees of Watkins who might serve as witnesses, and all of the

relevant documents of Watkins, are located in Montana.[2]  However, the same can be said of

Jofran's witnesses and documents.  "Litigating in a party's home forum . . . is almost always

more convenient than litigating in a foreign forum."  *Neelon v. Krueger*, 63 F. Supp. 3d 165, 173

(D. Mass. 2014).  As in the transfer context, where the defendant bears a lesser burden to show

that the alternative forum is preferable, dismissal is inappropriate where "its effect is merely to

shift the inconvenience from one party to the other."  *Sigros v. Walt Disney World Co.*, 129 F.

Supp. 2d 56, 71 (D. Mass. 2001); *see also Norwood v. Kirkpatrick*, 349 U.S. 29, 30, 32 (1955)

(finding that district judges have "broader discretion in the application of [§ 1404] than under the

doctrine of *forum non conveniens*" and that Congress intended § 1404 to "permit courts to grant

transfers on a lesser showing of inconvenience.").  Here, defendant has not shown that the

private interest factors justify dismissal.

Defendant makes much of the fact that concurrent litigation on the same matter is

pending before a Montana state court.  That argument is highly relevant in the context of a

motion to transfer a case from a federal district court to a different federal district court pursuant

to 28 U.S.C. § 1404, where the presence of a first-filed motion in an alternative forum is given

substantial weight.  *See, e.g., Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.

1987).  However, the First Circuit does not permit the consideration of concurrent litigation in

*forum non conveniens* analysis.  *See Adelson v. Hananel*, 510 F.3d 43, 54 (1st Cir. 2007) ("The

existence of concurrent litigation is not a relevant factor to the [*forum non conveniens*]

---

[2] Relying on *Interface Partners,* defendant contends that the presence of these witnesses and documents "weighs heavily" in favor of a Montana forum.  *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 104 (1st Cir. 2009).  Defendant's reliance on this precedent is misplaced.  *Interface Partners* suggests that courts should give substantial weight to the forum in which the alleged misconduct occurred, rather than the location where the contract was formed.  *Id.*  Here, California, not Massachusetts or Montana, is home to the warehouses and employees who allegedly failed to comply with the contract terms.  However, no party has suggested that California is an available or more convenient alternative forum.

analysis"). Although the presence of concurrent litigation may be relevant to demonstrate the availability of an alternative adequate forum, it is not properly considered when balancing the factors of convenience. *See Huhtamaki Co. Mfg. v. CKF, Inc.*, 648 F. Supp. 2d 167, 170 (D. Me. 2009) (interpreting *Adelson* as allowing consideration of concurrent litigation for purpose of establishing alternative forum). Defendant reads *Adelson* to preclude consideration of a first-filed action in weighing public interest factors, while allowing such consideration in weighing private interest factors; however, subsequent case law has not given *Adelson* such a narrow reach. *See Neelon v. Krueger*, 63 F. Supp. 3d 165, 171–72 (D. Mass. 2014) ("*Adelson* stands for the rule that concurrent litigation does not affect the court's *forum non conveniens* inquiry").[3] The different weights ascribed to the existence of a first-filed action in the context of a motion to transfer and a motion to dismiss is reasonable in light of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

Defendant further contends that the public interest factors also support dismissal. Defendant has not, however, provided the Court with information about the relative congestion of the competing dockets of the two jurisdictions. *See Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 428 (1st Cir. 1991) (finding that the appropriate inquiry in analyzing the administrative difficulties of docket congestion is for a court to make a "comparative determination of where the case can most quickly be resolved"). Likewise, the factors related to having localized controversies decided at home, ease of access for interested members of the public, and the

---

[3] Courts in other circuits have also interpreted *Adelson* to foreclose the consideration of concurrent litigation in balancing convenience factors for *forum non conveniens* analysis. *See RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2013 WL 5462295, at *3 (M.D.N.C. Sept. 30, 2013) (finding that *Adelson* stands for the proposition that it is error to construe "the importance of concurrent litigation within the *forum non conveniens* analysis"); *Hayes Bicycle Grp., Inc. v. Muchachos Int'l Co.*, No. 06-CV-1305, 2008 WL 4830570, at *3 (E.D. Wis. Oct. 31, 2008) (interpreting *Adelson* as standing for proposition that "concurrent litigation is not a relevant factor in *forum non conveniens* analysis").

burden of jury duty do not weigh in favor of either party because the parties are each at home in the competing jurisdictions.

The only public interest factor that may cut in defendant's favor is an alleged choice of law provision in the 2015 Agreement. Defendant contends that the 2015 Agreement incorporates a choice of law provision from a different contract providing that Montana law shall govern the interpretation of the contract. Plaintiff contests this assertion, arguing that the provision was not incorporated, but merely referenced. The Court need not decide at this time whether Montana law or another state's law is the appropriate framework for analyzing the 2015 Agreement. Even assuming that the choice of law provision applies to the 2015 Agreement, that factor is relevant, but not dispositive. *See id.* at 428. Defendant has not made a strong showing that the balance of factors strongly weighs in favor of litigating this action in Montana. Accordingly, the defendant's motion to dismiss on the basis of *forum non conveniens* will be denied.

### B.   Motion to Dismiss Plaintiff's Claims under the Massachusetts Consumer Protection Act

In the alternative, defendant has moved to dismiss Count Five of the verified complaint, which alleges a violation of Mass Gen. Laws ch. 93A for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the verified complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555

(citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the verified complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A defendant may be liable under Chapter 93A if it engages in an unfair method of competition or an unfair or deceptive act or practice.  Mass. Gen. Laws ch. 93A, §§ 2, 11.  The statute provides that an action under § 11 can only be brought if "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  Mass. Gen. Laws ch. 93A, § 11.  To trigger liability under Chapter 93A, the conduct in question must fall within "'the penumbra of some common-law, statutory, or other established concept of unfairness' or be 'immoral, unethical, oppressive or unscrupulous.'"  *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.*, 217 F.3d 33, 40 (1st Cir. 2000) (quoting *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996) (alterations omitted)).  It is well settled that "[a] mere breach of contract does not constitute an unfair or deceptive trade practice under 93A, unless it rises to the level of commercial extortion or a similar degree of culpable conduct."  *Id.* (quotations and citations omitted).

Plaintiff has alleged that defendant's issues with storage, invoicing, and communication go beyond mere breach of contract.  Taken in the light most favorable to plaintiff, the complaint alleges that defendant breached the 2015 Agreement in "a deliberate attempt to obtain the

benefits of the contract, and to avoid fulfilling its own obligations under it." *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, 2014 WL 1203106, at *7 (D. Mass. Mar. 19, 2014).  That allegation is sufficient to survive a motion to dismiss; whether the underlying facts are sufficient is a question for another day.  Accordingly, plaintiff has alleged facts sufficient to make out a claim under Mass. Gen. Laws ch. 93A § 11.

Defendant further contends that plaintiff has not alleged facts sufficient to show that the violations of ch. 93A occurred "primarily and substantially" within Massachusetts.  The Massachusetts Supreme Judicial Court does not use enumerated factors to analyze a "primarily and substantially" challenge, instead preferring a "fact-intensive approach" in which the judge must consider "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc*., 329 F.3d 216, 235 (1st Cir. 2003) (quoting *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 473 (2003)).

Although the inquiry is generally a holistic one, at the pleading stage a § 11 claim may survive a motion to dismiss based on a "primarily and substantially" challenge upon a showing that the plaintiff is located in Massachusetts and that the injury occurred in Massachusetts.  *See Back Bay Farm, LLC. v. Collucio*, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) ("as the First Circuit has directed, a [ch. 93A] section eleven cause of action, attacked via a motion to dismiss, should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is located, and claims an injury, in Massachusetts") (citing *Amcel Corp. v. Int'l Exec. Sales, Inc.*, 170 F.3d 32, 36 (1st Cir. 1999)); *see also AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 2014 WL 4656608, at *7 (D. Mass. Sept. 12, 2014); *Epoxy Tech., Inc. v. Daizo Corp.*, 2013 WL 2146844, at *2 (D. Mass. May 16, 2013); *SCVNGR, Inc. v. eCharge*

*Licensing, LLC*, 2014 WL 4804738, at *6 (D. Mass. Sept. 25, 2014).

The verified complaint alleges that plaintiff is a Massachusetts company, that at least one employee traveled from Massachusetts to California to tour potential facilities after it was forced out of the Hemlock Avenue warehouse, and that the injury occurred in Massachusetts.  The uncontested exhibits attached to the verified complaint also make clear that the communications between the parties were being sent and received at each party's office in Massachusetts and Montana, respectively.[4]  Taking these facts in the light most favorable to plaintiff, the verified complaint alleges a plausible claim that the events giving rise to the 93A claim occurred "primarily and substantially" in Massachusetts.  Therefore, defendant's motion to dismiss Count Five of the verified complaint for failure to state a claim upon which relief can be granted will be denied.

### C.      Motion to Dismiss Plaintiff's Claims under the Montana Consumer Protection Act

In its response to defendant's motion to dismiss, plaintiff agreed to voluntarily dismiss Count Six of the verified complaint which alleges violations of the Montana Consumer Protection Act, Mont. Code § 30-14.  Accordingly, defendant's motion to dismiss Count Six of the verified complaint will be granted.

## IV.   Conclusion

For the reasons set forth above,

(1) Defendant's motion to dismiss the verified complaint on the basis of *forum non conveniens* is DENIED.

---

[4] These documents were apparently transmitted electronically via e-mail and fax.  However, the two documents most critical to plaintiff's 93A claim, the 2015 Agreement and defendant's January 8, 2016 letter notifying plaintiff that it would stop shipping inventory unless plaintiff immediately paid its arrearage in full, were sent electronically but are addressed from defendant's Montana office to plaintiff's Massachusetts office.

(2) Defendant's motion to dismiss plaintiff's claim under the Massachusetts Consumer

Protection Act, Mass. Gen. Laws ch. 93A, alleged in Count Five is DENIED.

(3) Defendant's motion to dismiss plaintiff's claim under the Montana Consumer Protection

Act Mont. Code § 30-14 alleged in Count Six is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  November 2, 2016