UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOFRAN SALES, INC., | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | CIVIL ACTION NO.: 1:16-CV-11174-FDS |
| v. | ) | |
| | ) | |
| WATKINS AND SHEPARD TRUCKING, | ) | |
| INC. | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF JOFRAN SALES, INC.'S MOTION TO QUASH SUBPOENA TO MAUREEN MULLIGAN, ESQ. AND FOR A PROTECTIVE ORDER

The Plaintiff Jofran Sales, Inc. ("Jofran") moves the Court to issue an order quashing the subpoena served by the defendant Watkins and Shepard Trucking, Inc. ("Watkins") on Maureen Mulligan ("Mulligan"), lead counsel retained by Jofran to represent it in the above-referenced matter, and prohibiting Watkins from subjecting Mulligan to a deposition directed at obtaining privileged and irrelevant information and/or information that may be obtained from other sources.

Federal courts have not looked with favor upon attempts to depose opposing counsel, restricting such depositions to truly "extraordinary circumstances."  Such extraordinary circumstances simply do not exist in the present case.  Here, the requested deposition of Jofran's counsel inherently seeks to invade the attorney-client privilege and work product doctrine and has seemingly been interposed purely for the purpose of harassment.  The deposition of Mulligan would not uncover relevant non-privileged information that Watkins could not otherwise obtain

from alternative sources.  Rather, her deposition would result only in further proceedings before the Court concerning objections on grounds of privilege that would have to be asserted at the deposition, increasing both the time and cost of this litigation.  Accordingly, there is no reason to permit a deposition of lead counsel of record on the facts of this case.  The Court should quash the subpoena and enter a protective order preventing Watkins from deposing Jofran's counsel. In further support of its motion, Jofran states as follows:

## I.      FACTUAL BACKGROUND

Jofran brought the present action for damages it has sustained as a result of Watkins' failure to comply with its obligation under a Storage Pricing Agreement ("SPA") for warehouse space and services.  See Verified Complaint, attached as Exhibit 1.

Jofran is a 41 year-old family corporation duly organized under the laws of the Commonwealth of Massachusetts.  Id. at ¶ 10.  On or about January 8, 2016, Watkins sent Jofran a letter which purported to rescind its contracts with Jofran, including the SPA which is the subject of the present litigation, and alleged that Jofran was in material breach thereof (the "January 8 Letter").  See January 8, 2016 correspondence, attached as Exhibit 2.  The January 8 Letter alleged that Jofran was in arrears on the payment of its storage and freight charges and instructed Jofran that Watkins expected "all of Jofran's inventory" to be out of its facilities within 60 days of the date of the letter.  Id.  The January 8 Letter further instructed that Watkins would cease shipping Jofran's inventory until the amounts set forth by Watkins were paid in full and advised Jofran that if the alleged arrearage was not "taken care of in 10 days" Watkins would "begin proceedings under [its] contract and applicable law to dispose of the inventory to satisfy the arrearage."  Id.

On the same day it received the January 8 Letter, Jofran retained Mulligan to provide legal counsel and representation with respect to the assertions contained in the letter purporting

to rescind Watkins' contracts with Jofran and threatening legal action and disposal of Jofran's property in Watkins' warehouse. <u>See</u> Affidavit of Maureen Mulligan ¶2, attached as <u>Exhibit 3</u>. Mulligan is a trial lawyer and partner at the law firm Peabody & Arnold LLP. <u>Id.</u> at ¶1. After Jofran retained Mulligan, she engaged in communications with Watkins' legal counsel, Trevor Uffelman, Esq. ("Uffelman") regarding the allegations in the January 8 Letter. <u>Id.</u> at ¶3. These communications with Uffelman and later with Chad Adams, Esq. ("Adams")related specifically to Watkins' allegation of breach of contract and sought to secure resolution of the issues alleged by Watkins in advance of the threatened legal proceedings and disposal of Jofran's property. <u>Id.</u> at ¶4. To the extent that these communications were not made available to Watkins by its own counsel, Jofran produced the communications between Mulligan and Uffelman and Adams in the course of discovery in the present case. <u>Id.</u> at ¶5.

Less than two weeks after Jofran received the January 8, 2016 Letter, on January 19, 2016, Watkins filed a Complaint in a Montana State Court which reasserted many of the same allegations that were contained in the January 8 Letter and set forth claims for breach of contract and rescission relating to the contracts identified in the January 8, 2016 Letter. <u>See</u> Complaint in <u>Watkins and Shepard Trucking, Inc. v. Jofran Sales, Inc.</u>, Montana First Judicial District Court, Lewis and Clark County, Case No. CDV-2016-46, attached as <u>Exhibit 4</u>.

The present action was filed by Jofran on June 21, 2016.

At all times since Jofran retained Mulligan, her role has been to provide legal counsel to Jofran and to act as Jofran's attorney with respect to Watkins' efforts to rescind Jofran's contracts and commence legal proceedings. <u>See</u> Affidavit of Maureen Mulligan ¶6, attached as <u>Exhibit 3</u>. Mulligan provided Jofran with legal counsel regarding the allegations in the Montana litigation and she has acted as lead litigation counsel in the present case. <u>Id.</u> at ¶7.

She is not a party to either the Montana litigation or the present litigation.

On April 10, 2017, Watkins served Jofran with twenty-three written interrogatories in the present case. <u>See</u> Defendant's First Set of Interrogatories to Plaintiff, attached as <u>Exhibit 5</u>. Not a single interrogatory propounded by Watkins specifically seeks information pertaining to the communications between Mulligan and Uffelman or Adams. <u>Id</u>.

Between March 2017 and July 2017, Jofran produced in excess of 50,000 pages of documents in its initial disclosures and in responses to document requests served by Watkins. <u>See</u> Affidavit of Maureen Mulligan at ¶8, attached as <u>Exhibit 3</u>.

In a letter dated June 12, 2017, Watkins notified Jofran that it would like to take the deposition of Mulligan in the above-reference matter. <u>See</u> June 12, 2017 correspondence, attached as <u>Exhibit 6</u>. In response, Jofran, advised Watkins that it would oppose any effort to take Mulligan's deposition because Mulligan is not a party to the present case, any information that could be gleaned from Mulligan at a deposition is not relevant to the claims and/or defenses at issue in the present case and would likely delve into information protected by the attorney-client privilege and the work product doctrine. <u>See</u> July 7, 2017 correspondence, attached as <u>Exhibit 7</u>.

On August 14, 2017 at 2:00 p.m. EST the parties through their respective counsel held a telephone conference in an effort to narrow and/or resolve the issue in dispute; namely the appropriateness and necessity of the deposition of Mulligan. Cortney Godin participated in the call on behalf of Jofran. Attorneys Kevin Duddlesten and Mark Darling participated in the call on behalf of Watkins. The conference lasted approximately one hour, and multiple discovery matters were discussed including the proposed deposition of Mulligan. The parties, through their counsel, were not able to reach an agreement as to the propriety and necessity of Mulligan's deposition in this case.

Following the August 14, 2017 telephone conference concerning the issue of Mulligan's deposition, Watkins forwarded Jofran's counsel a Subpoena for the testimony of Mulligan and Notice of Deposition also pertaining to Mulligan's deposition. <u>See</u> Subpoena, attached as <u>Exhibit 8</u>; Notice of Deposition, attached as <u>Exhibit 9</u>.

Via email correspondence on August 15, 2017, Counsel for Jofran agreed to accept service of the Subpoena, and in an effort to further narrow the issues before the Court, Jofran requested that Watkins' identify the topics upon which it wished to examine Mulligan. <u>See</u> August 15, 2017 correspondence from C. Godin to M. Darling and K. Duddlesten, attached as <u>Exhibit 10</u>. Watkins refused to provide these topics. <u>See</u> August 15, 2017 correspondence from K. Duddlesten to C. Godin, attached hereto as <u>Exhibit 10</u>.

In addition to the deposition of Mulligan, Watkins has requested the 30(b)(6) deposition of Jofran as well as the depositions of individual Jofran employees, including Jofran's President, Joff Roy and Jofran's Chief Financial Officer and Director of Operations, Kristen Connell. It is anticipated that these deposition will go forward in September or October 2017.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 also provides the Court with broad discretion to issue protective orders to limit or preclude discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1). Similarly, Federal Rule of Civil Procedure 45 provides the Court with the discretion to "quash or modify a subpoena that…requires disclosure of privileged or protected matter, if no exception or waiver applies…or subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). "Because deposition of a party's attorney is usually

both burdensome and disruptive, the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c) protective order unless the party seeking the deposition can show both the propriety and need for the deposition." N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D.N.C. 1987); see also, Dunkin' Donuts, Inc. v. Mandorico, Inc., 181 F.R.D. 208, 210 (D. P.R. 1998).

### III.   ARGUMENT

#### A. <u>Depositions of Counsel Are Allowed Only in Extraordinary Circumstances</u>

Federal courts have agreed that depositions of opposing counsel should be allowed only in extraordinary circumstances.   Such circumstances do not exist in the present case. Specifically, when considering motions for a protective order under Fed. R. Civ. P. 26(c) and/or motions to quash a subpoena under Fed. R. Civ. P. 45(c)(3), courts have routinely held that "depositions of opposing counsel are disfavored" and have "long been discouraged." See e.g., Avid Technology, Inc. v. Media Gobbler, Inc., NO. CIV.A. 14-CV-13746, 2016 WL 696092, *5 (D. Mass. 2016) (refusing to permit "extreme measure" of deposing opposing counsel); Guantanamera Cigar Co. v. Corporacion Habanos, S.A., 263 F.R.D. 1, 8 (D.D.C. 2009) ("Depositions of opposing counsel are generally disfavored in federal courts.");   Dunkin' Donuts, Inc., 181 F.R.D. at 209 ("[federal] courts have held that deposing an opponent's attorney is a drastic measure and is infrequently proper"); Simmons Foods, Inc. v. Willis, 191 F.R.D. 625, 630 (D. Kan. 2000) (request to take deposition of an attorney for a party may constitute an "extraordinary circumstance justifying departure from the normal rule" that any person may be deposed); Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co., 276 F.R.D. 376 (D.D.C. 2011) ("The practice of deposing opposing counsel...is generally disfavored in federal courts."); Rainbow Investors Group, Inc. v. Fuji Trucolor Missouri, Inc., 168 F.R.D.  34, 36 (W.D. La 1996) ("deposition of opposing counsel is a practice that has long been discouraged as

disruptive of the adversarial system"); Broughton v. Cotter Corp., 65 F.3d 823, 830 (10th Cir.

1995); RFF Family Parntership, LP v. Link Development, LLC, 68 F.Supp. 3d 260 (D. Mass.

2014); Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).

There are sound reasons for the federal courts' disfavor for the depositions of

opposing counsel, which have been cogently summarized by the Eight Circuit:

> Undoubtedly, counsel's task in preparing for trial would be
> much easier if he could dispense with interrogatories,
> document requests, and depositions of lay persons, and simply
> depose opposing counsel in an attempt to identify the
> information that opposing counsel has decided is relevant and
> important to his legal theories and strategy. The practice of
> forcing trial counsel to testify as a witness, however, has long
> been discouraged, and recognized as disrupting the adversarial
> nature of our judicial system. Taking the deposition of
> opposing counsel not only disrupts the adversarial system and
> lowers the standards of the profession, but it also adds to the
> already burdensome time and costs of litigation. It is not hard
> to imagine additional pretrial delays to resolve work-product
> and attorney-client objections, as well as delays to resolve
> collateral issues raised by the attorney's testimony. Finally, the
> practice of deposing opposing counsel detracts from the quality
> of client representation. Counsel should be free to devote his or
> her time and efforts to preparing the client's case without fear
> of being interrogated by his or her opponent. Moreover, the
> "chilling effect" that such practice will have on the truthful
> communications from the client to the attorney is obvious.

Shelton, 805 F.2d at 1327 (internal citations omitted).  See also West Peninsular Title Co. v.

Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (citing N.F.A. Corp., 117 F.R.D. at

85); In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 429, 437 (E.D. Pa 1981))

(depositions of opposing counsel "inherently constitute an invitation to harass the attorney and

parties, and to disrupt and delay the case").

For these reasons, federal courts exercise great care in determining whether the

deposition of opposing counsel is permissible.  Kelling v. Bridgestone/Firestone, Inc., 153

F.R.D. 170, 171 (D.Kan. 1994).  Numerous federal courts faced with making this determination have adopted a three-pronged test first introduced by the Eight Circuit Court of Appeals in Shelton v. American Motors Corp. (the "Shelton test"). 805 F.2d at 1327.  The Shelton test requires that a party seeking to depose legal counsel must show that: (1) no other means exist to obtain the information other than deposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case.  Shelton, 805 F.2d at 1327.  See e.g., Theissen v. GE Capital Corp., 225 F.3d 1221 (10th Cir. 2001) (district court did not err in denying deposition of employer's counsel where it found that employee had other means to obtain information sought); Nationwide Mut. Ins. Co v. Home Ins. Co., 278 F.3d 621, 628-29) (6th Cir. 2002) (adopting the Shelton test); Erhart v. Bofi Federal Bank, NO. CIV.A. 15CV2287 BAS consolidated with 15CV2353 BAS, 2017 WL 840648, *3-4 (S.D. Cal. 2017) (slip opinion) (the Shelton Test "has been expressly adopted by several other circuits and this district").[1]  In general terms, the Shelton test requires that the party seeking to depose

---

[1] See also Theriot v. Parish of Jefferson, 185 F.3d 477, 491 (5th Cir. 1999) (citing Shelton, 805 F.2d at 1327) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances"); Asarco LLC v. Union Pacific Railroad Company, NO. CIV.A. 2:12-CV-00283, 2016 WL 1755241, *5-6 (D. Idaho 2016) ("A review of these cases – particularly those involving district courts within the Ninth Circuit – identifies that the proper standard is articulated in" Shelton); Ford Motor Co. v. National Indem. Co., NO. CIV.A.3:12CVI839, 2013 WL 3831438, *2 (E.D. Va. 2013) ("[t]he test for determining whether it is appropriate to allow the deposition of an opposing party's counsel is set forth in" Shelton); Broyles v. Convergent Outsourcing, Inc., NO. CIV.A. C16-775-RAJ, 2017 WL 2256773, *1-2 (W.D. Wa. 2017) (slip opinion) (citing Shelton as the "leading case on attorney depositions"); American Heartland Port, Inc. v. American Port Holdings, Inc., NO. CIV.A.5:11-CV-50, 2014 WL 12605549, *3 (N.D. W.Va. 2014) (slip opinion) (citing Shelton as the "prevailing test for determining whether it is appropriate to allow opposing counsel to be deposed" and noting that it has been "uniformly applied" by district courts throughout the Fourth Circuit); Fire and Casualty Insurance Company, NO. CIV.A. EP-08-CV-305, 2009 WL 10669395, *1-2 (W.D. Tex. 2009) (slip copy) (describing Shelton as "[t]he seminal case regulating the deposition of opposing counsel"); Flynn v. State Farm DiLorenzo v. Costco Wholesale Corp., 243 F.R.D. 413, 414-415 (W.D. Wash. 2007) ("District courts in this circuit have uniformly followed the Eighth Circuit when analyzing whether to permit the deposition of counsel."); Allergan Inc. v. Pharmacia Corp., NO. CIV.A.01-141, 2002 WL 1268047, *1 (D. Del. 2002) (referring to the Shelton test as "a general principle"); Desert Orchid Partners, L.L.C. v. Transaction System Architects, Inc., 237 F.R.D. 215 (D. Neb. 2006); E.E.O.C. v. Pointe at Kirby Gate, LLC, 2009 F.R.D. 89 (W.D. Tenn. 2003); S.E.C. v. Buntrock, 217 F.R.D. 441 (N.D. Ill. 2003); New York v. Solvent Chemical Co., Inc., 214 F.R.D. 106 (W.D.N.Y. 2003); Simmons Foods, Inc. v. Willis, 191 F.R.D. 625 (D. Kan. 2000); Vermont Public Service Corp. v. Adriatic Ins. Co., 185 F.R.D. 179 (D. Vt. 1998); Jones By and Through Jones v. Bd. Of Police Comr's of Kansas City, Mo., 176 F.R.D. 625 (W.D. Mo. 1997); Fried v. Sungard Recovery Services, 164 F.R.D. 405 (E.D. Pa 1996); Caterpillar Inc. v. Friedemann, 164 F.R.D. 76 (D. Or. 1995); Ditech Financial LLC v. SFR Investments Pool 1, LLC, NO.

opposing counsel "'establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome.'" Dunkin' Donuts, Inc., 181 F.R.D. at 210 (quoting N.F.A. Corp., 117 F.R.D. at 85. The Shelton test has been viewed by federal courts as balancing "parties' right to discover relevant unprivileged information with opposing parties' right to avoid deposition of their counsel taken merely to harass." Cascone v. Niles Home for Children, 897 F.Supp. 1263, 1265 (W.D.Mo. 1995). The burden is on the party seeking the deposition to demonstrate the propriety and need for the deposition, and a trial court has the discretion under Federal Rules 26(c) and 45(d) to quash a deposition subpoena and/or enter a protective order when any one or more of the three prongs of the Shelton test are not met. Id.

Although the First Circuit has not yet expressly adopted the Shelton test, the relevant case law demonstrates that attorney depositions are not favored in this Circuit. See e.g. MacKnight v. Leonard Morse Hosp., 828 F.2d 48, 51 (1st Cir. 1987) (affirming decision that plaintiff had not made sufficient showing that deposition of attorney was warranted); Avid Technology, Inc., 2016 WL 696092 at *5 (citation omitted)("'[t]aking depositions of opposing trial counsel is generally disfavored and discouraged'"); Dunkin' Donuts, Inc., 181 F.R.D. at 209 ("federal courts have not looked with favor upon attempts to depose opposing counsel"). Moreover, at least one court in the First Circuit has explicitly applied the Shelton test in issuing a protective order prohibiting the deposition of counsel. Dunkin' Donuts, Inc., 181 F.R.D. at 209-210.

CIV.A.2:!5-CV-476, 2016 WL 4370034, *1-2 (D. Nev. 2016) (slip opinion); State Farm Mut. Auto. Ins. co. v. Stavropoloskiy, NO. CIV.A.15-CV-5929, 2017 WL 3116284, *2 (E.D. Pa. 2017) (slip opinion); Federal Trade Commission v. First Universal Lending, LLC, NO. CIV.A.09-82322-CIV, 2010 WL 11504276, *1 (S.D. Fla. 2010) (slip opinion); Langdale Company v. National Union Fire Ins. Co. of Pittsburgh, NO. CIV.A.1:12-CV-02422, 2013 WL 12067452, *3 (N.D. Ga. 2013) (slip opinion); Hicks v. Association of Apartment Owners of Makaha Valley Plantation, NO. CIV.A. 2016 WL 3676106, *4 (D. Haw. 2016); Timothy v. Oneida County, NO. CIV.A.4:14-CV-00362, 2015 WL 4170140, *3 (D. Idaho 2015); Guantanamera Cigar Co., 263 F.R.D. at 1; Static Control Components, Inc. v. Lexmark Intern., Inc., 250 F.R.D. 575 (D. Colo. 2007); S.E.C. v. Goldstone, 301 F.R.D. 593 (D.N.M. 2014); F.D.I.C. v. Fidelity and Deposit Co. of Maryland, NO.CIV.A. 3:11-CV-19, 2013 WL 2421776, *2 (S.D. Ind. 2013).

Accordingly, for the same reasons set forth in <u>Shelton</u>, and in the federal cases that have adopted the <u>Shelton</u> criteria, this Court should apply the <u>Shelton</u> test to Watkins' efforts to depose Mulligan in the present case.

**B.  <u>Watkins Cannot Satisfy the Shelton Test</u>**

Watkins should not be permitted to depose Mulligan because it cannot satisfy any one of the three prongs of the <u>Shelton</u> test which have been repeatedly identified by the courts as a prerequisite to a party being allowed to take the deposition of counsel. <u>See</u> <u>e.g.</u>, <u>Dunkin' Donuts, Inc.</u>, 181 F.R.D. at 210.

*1.  Other Means Exist to Obtain the Information Sought by Watkins*

To date, Watkins has refused to provide Jofran with the specific topics of information that it intends to seek from Mulligan.  Taken at face-value, the deposition subpoena for Mulligan commands her to appear to testify on unlimited topics, without exception.  As lead counsel for Jofran, the scope of the subpoena as currently served would include information protected by the attorney-client privilege and the work product doctrine.  With that said, in the event that Watkins now narrows the scope of the proposed deposition so that it does not intrude on the attorney-client privilege and the work-product doctrine, it is inconceivable that the information sought could not be obtained by other means. <u>Shelton</u>, 803 F.2d at 1327; <u>Dunkin' Donuts</u>, 181 F.R.D. at 211-212.  For example, if Watkins wished to inquire about Jofran's attempts to avoid the legal action threatened by Watkins in the January 8 Letter, that information is equally available to Watkins' through its own in-house counsel and/or the information could have been sought through Watkins' written interrogatory requests to Jofran, which conspicuously lacked any specific question on this issue.  Depending on the nature of the information sought, certain information could also be obtained through the deposition of Jofran employees.  Further, to date, Jofran has produced in excess of 50,000 pages of documents in this case both in its initial

disclosures and in response to document requests proffered by Jofran. These documents include all of Mulligan's written communications with Watkins' counsel after she was retained. It is likely that some of the information sought by Watkins can be found within that production.

In sum, Jofran's Motion should be allowed because any nonprivileged information is available to Watkins through other sources, and it does not appear that Watkins has tried to secure the information sought through any means other than the deposition of Mulligan. See e.g., Dunkin' Donuts, 181 F.R.D. at 211-212 (granting motion for protective order where court found that since there were other available sources, such as depositions of corporate executives, the defendant had "failed to demonstrate that no other means exist to obtain the information than to depose opposing counsel"); Asarco LLC, NO. CIV.A. 2:12-CV-00283, 2016 WL 1755241, at *8-9 (entering protective order where counsel did "not appear to be the exclusive reservoir of the sough-after information"); Erhart, NO. CIV.A. 15CV2287 BAS consolidated with 15CV2353 BAS, 2017 WL 840648 st *4-5 (granting motion to quash where court found discovering party failed to "show any reason why the other parties to the communications could not provide the same information that [the attorney] could provide").

### 2. The Information Sought by Watkins is Privileged and/or Irrelevant

There is simply no basis in the record for Watkins to claim that any information possessed by Mulligan and not already produced in this case is both relevant and non-privileged. See e.g., See e.g., Dunkin' Donuts, 181 F.R.D. at 212 (party seeking deposition must demonstrate that the information requested is relevant and not protected by the attorney-client privilege or the work-product doctrine); Erhart, 2017 WL 840648 st *4-5 ("While the nature and extent of [counsel's] communications with third parties may be non-privileged, deposing [counsel] on her already-produced documents runs the risk of involving privilege objections and collateral matters not relevant to the litigation."). Watkins' Subpoena and Notice of Deposition

are both all-encompassing and cannot be read as seeking anything other than information that is subject to the attorney-client privilege and the work-product doctrine.   As set forth in the Affidavit of Maureen Mulligan, Jofran retained Mulligan on January 8, 2016 after it received the January 8 Letter from Watkins which alleged breach of contract and threatened legal action and disposal Jofran's property. See Affidavit of Maureen Mulligan at ¶2, attached as Exhibit 3.   As Jofran's legal counsel, Mulligan engaged in communications with Watkins's legal counsel, Uffelman regarding the allegations in the January 8 Letter.  Id. at ¶3.   These communications related specifically to Watkins' allegation of breach of contract and sought to secure resolution of the issues alleged by Watkins in advance of the threatened legal proceedings. Id. at ¶4. Watkins filed a lawsuit against Jofran in Montana 11 days after Jofran retained Mulligan.  See Complaint in Watkins and Shepard Trucking, Inc. v. Jofran Sales, Inc., Montana First Judicial District Court, Lewis and Clark County, Case No. CDV-2016-46, attached as Exhibit 4.   The lawsuit related specifically to the allegations contained in Watkins' January 8 Letter.  Id.  Jofran subsequently filed the present lawsuit on June 21, 2016.   At all times since Jofran retained Mulligan, her role has been to provide legal counsel to Jofran with respect to Watkins' efforts to rescind Jofran's contracts and commence legal proceedings. See Affidavit of Maureen Mulligan at ¶6, attached as Exhibit 3.   Mulligan has acted as Jofran's lead litigation counsel in the present litigation.  Id. at ¶7.

To date, Watkins has not identified specifically, the information it wants from Mulligan and why that information would be both relevant and not be protected by the attorney-client privilege and/or the work product doctrine. See e.g., Ditech Fin. LLC v. SFR Invesstments Pool 1, LLC, NO. CIV.A. 2:15-CV-476-JCM-VCF, 2016 WL 4370034, at *2 (D. Nev. 2016) (where discovering party "has not identified what specific information it wants and why that information would not be covered by the privilege" and instead "summarily asserts that the underlying facts

are not privileged" the second prong of the <u>Shelton</u> test is not met).   All of Mulligan's communications with Jofran in this matter are clearly protected by the attorney-client privilege. <u>See</u> <u>e.g.</u>, <u>F.D.I.C. v. Ogden Corp.</u>, 202 F.3d 454, 460 (1st Cir. 2000). The "attorney-client privilege serves important ends," one of which is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice" (citations omitted). <u>Id</u>. "The privilege that attends the attorney-client relationship 'extends to all communications made to an attorney or counsel, duly qualified and authorized as such, and applied to by the party in that capacity, with a view to obtain his advice and opinion in matters of law, in relation to his legal rights, duties and obligations.'"   <u>Id</u>. (internal citations omitted).   It cannot be seriously disputed that communications between Jofran and its attorney, Mulligan, relating to the threat of litigation and the subsequently filed litigation, fall within the attorney-client privilege.  Furthermore, any analysis, research, strategy, or comments by Mulligan relating to matters at issue in the Montana litigation and the present litigation, are protected by the work-product doctrine. Fed. R. Civ. P. 26(b)(3); <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947).

 The mere fact that Mulligan engaged in communications with Watkins's legal counsel, Uffelman regarding the allegations in the January 8 Letter and thereby sought to secure resolution of the issues alleged by Watkins in advance of the threatened legal proceedings, is not a basis for the Court to rule that she was acting in any role other than as a legal advocate and counsel for Jofran. <u>See</u> <u>e.g.</u>, <u>Dunkin' Donuts</u>, 181 F.R.D. at 212 ("The fact that [counsel] wrote a letter, which plaintiff asserts was a 'pro forma' communication, does not imply that he may be considered a fact witness who should be deposed"); <u>Cent. Vermont Pub. Serv. Corp. v. Adriatic Ins. Co.</u>, 185 F.R.D. 179 (D. Vt. 1998) (rejecting policyholder's claimed need to take the deposition of law firm based upon bare allegation that the law firm acted as claims adjuster as

opposed to legal representative). To hold otherwise would mean that any attorney who engages in communications with opposing counsel pre-suit on behalf of their client, in an attempt to either resolve in whole or in part the conflict at hand, could be subject to having her or his deposition taken.  In any event, communications Mulligan had with Watkins' counsel are obviously known by those counsel.  There is no need to depose her to get the substance of the communications.

Given that the deposition notice broadly provides for questioning on topics protected by the attorney-client privilege or the work product doctrine, issuance of a protective order prior to the deposition is appropriate.  Flynn, 116 F.R.D. at 3-4, 6 (quashing deposition subpoenas to attorneys where requiring a "privilege to be asserted on a question-by question basis involve[d] the possibility of the risk of disclosure").

> 3. *The Testimony Sought by Watkins is Not Crucial to the Claims and Defenses in This Case*

As set forth above, Watkins has refused to specify the topics upon which it is seeking to depose Mulligan.  It follows that Watkins has not identified how any non-privileged information in the possession of Mulligan and not available from another source, is "crucial" to its case.  In fact, given Mulligan's ongoing role as lead legal counsel from the date she was retained in January 2016 to the present, Watkins cannot identify any non-privileged information in Mulligan's possession that is crucial to the claims or defenses at issue.

## IV.   CONCLUSION

Watkins' attempt to take the deposition of Jofran's lead counsel in this case is completely unwarranted, improper and seeminly interposed solely for the purpose of harassing Jofran and burdening Jofran with increased legal cost and delay.  The weight of the authority both in this district and others holds that subpoenas like the one served by Watkins on Mulligan in this case,

seeking to depose attorneys for the purpose of obtaining privileged and irrelevant testimony that can and should be obtained from other sources should not be allowed.   Accordingly, Jofran moves this Court to enter a protective order and/or an order quashing the Subpoena served on Mulligan.   Jofran also asks, pursuant to Fed. R. Civ. P. 37(a)(f), that the Court award Jofran reasonable expenses incurred in drafting and arguing this Motion.

Dated: August 30, 2017

Respectfully submitted,

JOFRAN SALES, INC.
By its attorneys,

/s/ Cortney M. Godin
Maureen Mulligan, BBO #556482
Cortney M. Godin, BBO #661593
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100
mmulligan@peabodyarnold.com
cgodin@peabodyarnold.com

## CERTIFICATION PURSUANT TO LOCAL RULES 7.1 AND 37.1
## AND FED. R. CIV. P. 26(C)(1)

The undersigned counsel hereby certifies that counsel for Jofran conferred with defendants' counsel in good faith regarding the filing of this motion via both a telephone conference held on August 14, 2017 and multiple email communications on August 14 and 15, 2017 in an effort to narrow and/or resolve the issues in dispute without court action.

/s/ Cortney M. Godin

## CERTIFICATE OF SERVICE

I hereby certify that, on August 30, 2017, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Cortney M. Godin
Cortney M. Godin

1275329